**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| WILD VIRGINIA, et al. | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )    **Case No. 3:25-cv-0100** |
| | ) |
| VIRGINIA DEPARTMENT OF | ) |
| ENVIRONMENTAL QUALITY, et al. | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

The Virgina Department of Environmental Quality and Michael Rolband, in his official

capacity (collectively, "DEQ"), by counsel, file this memorandum in further support of their

motion to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

I.    **INTRODUCTION**

Wild Virginia and the Potomac Riverkeeper Network (PRKN") (collectively, the

"Plaintiffs") and the Department of the Army (the "Army") oppose remanding this case to

Virginia state court. But DEQ is required to seek dismissal lest this Court act without subject

matter jurisdiction.[1] If this Court finds that it has subject matter jurisdiction, DEQ asks that this

case be dismissed, because the Plaintiffs have failed to establish standing.

---

[1] The Plaintiffs, citing 28 U.S.C. § 1447(c), argue that remand, not dismissal, is the appropriate action for this Court to take if the Court finds it lacks subject matter jurisdiction. DEQ does not dispute this argument.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION[2]

As this Court is aware, "federal courts are courts of limited jurisdiction." *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 28 (2025). "Respect for the limited jurisdiction of the federal courts requires all involved—litigants, district courts, and appellate courts—to ensure that the threshold requirement of subject matter jurisdiction exists in each and every case. *Chalpin Realty Sc. LLC v. Jersam Realty Inc.*, No. 24-1971, 2025 U.S. App. LEXIS 32927, *5 (4th Cir. Dec. 17, 2025). Finally, when faced with uncertainty over jurisdiction, "the court must resolve all doubts in favor of remand." *State Farm Mut. Auto. Ins. Co. v. Old Dominion Ins. Co.*, No. 7:20-cv-00754, 2021 U.S. Dist. LEXIS 149879, *8 (W.D. Va. Aug. 10, 2021).

The only case that directly addresses the issue before this Court, states that the Virginia Administrative Procedure Act does not authorize federal courts to hear state administrative agency decisions. *Dr. Michael Fernandez, D.D.S., Ltd. v. Brich*, 2024 U.S. Dist. LEXIS 111043, *21 (E.D. Va. June 20, 2024). The Plaintiffs take issue with DEQ's reliance upon this case, but their criticism is mistaken. Contrary to the Plaintiff's statements in their opposition memorandum, ECF 16, the passage quoted on brief by DEQ states in full:

> [A]lthough the *Virginia Administrative Process Act* and the regulations implementing the VRAA provide for state judicial review of VDOT's benefit determinations, neither authorizes federal judicial review, even when read alongside the URA's implementing regulations. *See* 24 VAC. § 30-41-90; Va. Code §§ 2.2-4026, -4029.

---

[2] Even so, "a federal court always has jurisdiction to determine its own jurisdiction." *Brownback v. King*, 592 U.S. 209, 218 (2021).

2

*Brich* at *21 (emphasis added).[3] Significantly, *Brich* refers to Virginia Code § 2.2-4026, which the Plaintiff's rely upon for establishing jurisdiction in the original Petition for Appeal. ECF __ ¶ 32.

Reviewing Virginia Code § 2.2-4026 only confirms the *Brich* Court's statement.  This statute provides that a party claiming the "unlawfulness of a case decision . . . shall have a right of direct review . . . in the manner provided by the Rules of Supreme Court of Virginia." *Id.* Such cases "may be instituted in any court of competent jurisdiction as provided in § 2.2-4003." Section 2.2-4003, in turn, states that venue "shall be in the city or county where the administrative agency maintains its principal office." *Id.* There is nothing contained in Virginia Code § 2.2-4026 that supports federal jurisdiction over this state claim,

The Plaintiffs argue that the Virginia General Assembly was "doubtless[ly] aware" of the power of removal possessed by federal agencies under 28 U.S.C. § 1442(a) to no effect. Without quibbling over the premise, that observation is of no moment for determining the jurisdictional question. A "'waiver of immunity cannot be implied from general statutory language" but must be "explicitly and expressly announced" in the statute. *Afzall v. Commonwealth*, 273 Va. 226, 230, 639 S.E.2d 279, 281 (2007) (citing *Hinchey v. Ogden*, 226 Va. 234, 241, 307 S.E.2d 891, 895 (1983)) (cleaned up). The VAPA makes no such announcement.

Moreover, the Plaintiffs confuse the right to remove with an "unfettered right to litigate in federal court."  *Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831, 836 (7th  Cir. 2025); *see also Nebraska ex rel. Dep't of Soc. Servs. v. Bentson*, 146 F.3d 676, 679 (9th Cir. 1998) ("A defendant's power to remove a case to federal court is independent of the federal court's power

---

[3] The Plaintiff's mistake was clearly inadvertent and understandable because the same quotation – "authorize federal judicial review" – was also used in the opinion while discussing the federal APA. *Brich*, 2024 U.S. Dist. LEXIS 111043 pages 15 and 21.

3

to hear it."). Without question, the Army had a statutory basis for removal. Removal, however, does not establish this Court's jurisdiction to hear the case.

Returning to the issue of sovereign immunity, the Plaintiffs argue that Virginia "may have waived its sovereign immunity." ECF 16 at 21.  In support, they cite *Sierra Club v. State Water Control Bd.*, 64 F.4th 187 (4th Cir. 2023), where the Fourth Circuit reviewed and ultimately upheld DEQ's decision to issue a permit for a natural gas pipeline. In upholding DEQ's actions, the Fourth Circuit found that Virginia had waived its sovereign immunity because DEQ excepted accepted a "gift" from Congress and had "notice that any action they took relative to the issuance, conditioning, or denial of a water quality certification would be subject to federal judicial review." 64 F.4th at 195-96. Indeed, the federal statute at issue states that:

> [t]he United States Court of Appeals for the circuit in which a
> facility subject to section 3 or section 7 [15 USCS § 717b or 717f]
> is proposed to be constructed, expanded, or operated shall have
> original and exclusive jurisdiction over any civil action for the
> review of an order or action of a Federal agency (other than the
> Commission) or State administrative agency . . . .

*Id.* In addition, *Sierra Club* did not involve the VAPA. The Plaintiffs cannot point to any parallels between *Sierra Club* and the present case putting DEQ on notice that it may be haled into federal court under the VAPA.

This is a case of first impression on the narrow issue of whether a federal district court has subject matter jurisdiction to hear an administrative appeal under the VAPA. The Plaintiffs have not offered a single case in support nor have they indicated why a federal court should decide a case where the plaintiff is attempting to make a novel water quality claim by wresting the statutory discretion of DEQ away. This case presents important issues of state law.

4

Likewise, the purpose of 28 U.S.C. 1442(a) has been satisfied. The Army has removed this case, and this Court can easily discern that the Army has no unique federal right to vindicate. Rather, the Army is a party only because it is the permittee. Comity favors state jurisdiction.

### III.   THE PLAINTIFFS HAVE NOT DEMONSTRATED STANDING

Each plaintiff can establish standing by either showing a member with standing or that the organization itself has standing. The plaintiffs complain that DEQ asks this Court to disregard the sworn declarations submitted by the plaintiffs. ECF 16 at 17. DEQ is simply applying the "plausibility" analysis of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) to the allegations in the Complaint, no matter the source. Parties cannot bypass *Iqbal* by attaching a declaration with implausible assertions.

### A.  Wild Virginia lacks standing.

Two members of Wild Virginia have submitted declarations to support standing, George Semenov and Nancy Armour. Neither has established standing through their respective declarations.

Mr. Semenov indicates that he is concerned about his health and his family's health because of the risk of ingesting PFAS contaminated water. DEQ pointed out in its initial brief that Falls Church, where Mr. Semenov lives, obtains its drinking water upriver from Fort Belvoir. ECF 11 at 4-5. The Plaintiffs have not challenged that point, and thus his concerns about his drinking water are not well-founded. Mr. Semenov also raises health concerns about others in his family, but the Plaintiffs do not explain how such concerns about others constitute an "injury in fact" sufficient to support standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

We are left then with Mr. Semenov's concerns that he will ingest water from the Potomac River while kayaking. ECF 16-6 ¶¶ 9-10. He claims that if PFAS discharges from Fort Belvoir

are monitored and limited, he "would again enjoy kayaking." *Id.* ¶ 13. Mr. Semenov's assertion

is not plausible for a number of reasons. As set forth in the Petition for Appeal, "high

concentrations of various PFAS" have been present in Accotink Creek, which flows into the

Potomac River, were found in a 2021-2023 study. ECF 1-2 ¶ 75. Moreover, there are numerous

other sources of PFAS discharged into the Potomac River, *Id.* ¶ 74, and since the mid-1960s,

these "forever chemicals" have been discharged. Mr. Semenov's assertion that limits on

discharges now, after 60 years of discharges, is simply not plausible.

Nancy Armour "became concerned about PFAS in the last ten years." ECF 16-3 ¶ 5. She

is "very concerned about the concentrations of PFAS in the Potomac River watershed, due to

contamination from Fort Belvoir's discharges in addition to other sources." *Id.* ¶ 7 (emphasis

added). She asserts that if "DEQ is required to include monitors and includes limitations on

discharges of PFAS in Fort Belvoir's permit" she will "recover the same level of enjoyment I

used to have spending time on and eating food from the Potomac River." *Id.* ¶ 11.

At a textual level, no court can grant Mrs. Armour the relief she seeks because under the

VAPA, a Court cannot require DEQ to take an action that the law directs DEQ to decide.[4]

Moreover, like Mr. Semenov's declaration, Mrs. Armour's declaration is not plausible. She

recognizes there are sources of PFAS flowing into the Potomac River other than Fort Belvoir.  As

a member of Wild Virginia, she is also aware that of the existing "forever chemicals" already

---

[4] "Code § 2.2-4029 states in relevant part that when a court has determined an agency has committed an error of law, that court:

> may compel agency action unlawfully withheld . . . *except that the court shall not itself undertake to supply agency action committed by the basic law to the agency*. Where . . . a case decision is found by the court not to be in accordance with law under § 2.2-4027, *the court shall suspend or set it aside and remand the matter to the agency* for further proceedings, if any, as the court may permit or direct in accordance with law.

*Va. Ret. Sys. v. Cirillo*, 54 Va. App. 193, 204-05 (2009) (emphasis in original).

present in the Potomac River and its tributaries. Her assertion that she will "recover the same level of enjoyment" if DEQ is directed to impose monitoring and limits on Fort Belvoir is an implausible non sequitur.

Neither George Semenov nor Nancy Armour have plausibly demonstrated standing. As the representatives of Wild Virginia, their lack of standing necessarily dooms Wild Virginia's representational standing. Likewise, Wild Virginia has not alleged facts showing that the organization itself has standing, and all claims by Wild Virginia should be dismissed.

### B. Potomac Riverkeeper Network lacks standing.

Two members of PRKN have submitted declarations to support standing, Larry Zaragoza and Camilla Ng. Neither has established standing through their respective declarations.

Larry Zaragoza, a member of PRKN, is knowledgeable about PFAS generally and "the known PFAS contamination in the watersheds surrounding Ft. Belvoir." ECF 16-5 ¶ 13. That contamination may be present for many years because the "half-life of some PFAS polymers exceeds 1,000 years in the environment." *Id*. ¶ 9. He already avoids eating fish because of existing PFAS contamination. *Id.* ¶ 13.

Mr. Zaragoza's declaration, however, falls short of indicating that he intends to visit any affected area in the future and his concerns relate primarily to the existing condition of the waters surrounding Fort Belvoir. His declaration largely details his overall concerns about PFAS. These allegations fail to meet the "injury in fact" requirement of establishing standing. *Beck v. McDonald,* 848 F.3d 262, 271 (4th Cir. 2017).

Camilla Ng is a member of PRKN whose declaration is dated November 25, 2025, less than two months after the VPDES permit was issued. In her declaration, she states that because of her "awareness of water contamination" she enjoys "recreational use of Pohick Bay and

Accotink Creek less and may use these areas less often due to my concerns about the water quality." ECF 16-4 ¶ 8. She is describing her concerns about the existing contamination, not concerns about the permit issued to Fort Belvoir. Thus, even if this case were remanded and DEQ imposed monitoring and effluent limitations, Ms. Ng's concerns would not be redressed.

Neither Larry Zaeagoza nor Camilla Ng have demonstrated standing. As the representatives of PRKN, their lack of standing necessarily dooms PRKN's representational standing.

The Plaintiff's reliance upon *Corner Post v. Federal Reserve Sys. Bd. of Governors*, 603 U.S. 799, 805-06 is misplaced, as that case did not address standing, nor did Justice Kavanaugh's concurrence. ECF 16 at 16. He was addressing the availability of vacatur under the federal APA. *Id.* The other Supreme Court cases cited along with *Corner Post* are equally unhelpful. *Id.* DEQ is not asking this Court to pronounce a sea change in legal standing jurisprudence, but to look at the facts as pleaded by the Plaintiffs.

The Plaintiffs have asserted that the areas around Fort Belvoir already have "high concentrations" of the "forever chemical" PFAS leading to "toxic contamination" that predates the VPDES permit. ECF 1-2 ¶¶ 16, 61, 75. In fact, this contamination has been occurring since the 1960s. *Id.* ¶ 62. Even so, they argue limitations in a VPDES permit will redress their concerns and their members will happily return to the affected areas to recreate. The factual scenario the Plaintiffs have created is not plausible.

WHEREFORE, for the foregoing reasons, DEQ requests that this Court dismiss the Plaintiff's claims or provide other such relief the Court deems appropriate.

Respectfully Submitted,

THE VIRGINIA DEPARTMENT OF
ENVIRONMENTAL QUALITY AND MICHEAL
ROLBAND

By Counsel:   /s/ John D. Gilbody
John D. Gilbody (VSB No. 42788)
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-4319
Email: jgilbody@oag.state.va.us

Jerrauld C.C. Jones
  *Attorney General of Virginia*

Gretchen E. Nygaard
  *Deputy Attorney General*

Jacqueline C. Hedblom
  *Senior Assistant Attorney General*

John D. Gilbody (VSB No. 42788)
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-4319
Email: jgilbody@oag.state.va.us
*Counsel of Record*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system.

/s/ John D. Gilbody
John D. Gilbody* (VSB No. 42788)
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-4319
Email: jgilbody@oag.state.va.us

9