IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| WILD VIRGINIA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-0100 |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

Defendant the United States respectfully submits this Memorandum of Law in further
support of its Motion to Dismiss based on Plaintiffs' lack of standing.

**INTRODUCTION**

On March 11, 2026, the government filed its motion to dismiss for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), showing that Plaintiffs failed to
establish organizational or representational standing under Article III. Defs.' Mot., ECF No. 14;
Defs.' Mem., ECF No. 15. As to representational standing, the thrust of the government's motion
was focused on the first and third prongs of Article III—that Plaintiffs had not articulated a
cognizable injury and that any ruling from this Court would be unlikely to redress their alleged
injuries. Regarding organizational standing, the government demonstrated that Plaintiffs had
failed to articulate frustration of organizational purpose beyond the ordinary expenditure of
resources and therefore had not established organizational standing. On April 1, 2026, Plaintiffs
filed their response in opposition. Pls.' Resp., ECF No. 16.

The government files this Reply to address Article III standing and subject matter
jurisdiction arguments raised by other parties.

1

## ARGUMENT

### I. Plaintiffs have not established Article III standing.

While, as Plaintiffs note, standing is not "onerous"[1] and the claimed injury need only be a "trifle,"[2] it is not so low as to be meaningless.

### A. Plaintiffs have not established injury-in-fact.

The government has not conceded that "Plaintiff members have adequately alleged cognizable harms for purposes of Article III standing." Pls.' Resp. at 11, ECF No. 16. There are two lines of argument the government makes with respect to the injury prong of standing. First, that Plaintiffs' members' assertions are too vague and speculative to be a cognizable harm. Second, even assuming that the alleged injuries would be a cognizable harm in a citizen suit against a *permit violator*, that is not the case presented here.

The government stands on its opening brief with respect to the first argument. As to the second argument, Plaintiffs do not allege the Army violated the permit or any existing standard; instead, Plaintiffs challenge the issuance of the permit itself. Accordingly, Plaintiffs must establish that the injuries they allege are traceable to the issuance of the permit. In their response, Plaintiffs state that they are challenging the Virginia Department of Environmental Quality's ("VADEQ's") "violations of the [Virginia Administrative Procedure Act ("VAPA")] and the Clean Water Act in granting Fort Belvoir an industrial stormwater permit with no limitations or monitoring requirements for PFAS." They further assert that VADEQ's argument that the "averred harms are insufficient to confer standing because they 'are not tied to any violation of law or level of exposure'" is meritless. *Id.* at 13.

---

[1] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003).

[2] *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156-57 (4th Cir. 2000).

However, for a plaintiff to demonstrate standing, it must establish the "'invasion of a legally protected interest' that is 'concrete and particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The only legally protected interest Plaintiffs identify here is a generalized interest in water with no pollutants. But the Clean Water Act allows parties to discharge pollutants into waterways provided that the discharger complies with the various requirements of the Act. *See* 33 U.S.C. §§ 1311(a), 1342, 1344. If, for example, Fort Belvoir's permit allowed for the discharge of an effluent at fixed amount, and Belvoir was discharging below that amount, there would be no permit violation and no injury to downstream parties unless they could establish some other violation of the Clean Water Act. *See* 33 U.S.C. § 1342(k); *Piney Run Pres. Ass'n v. Cty. Comm'rs.*, 268 F.3d 255, 266 (4th Cir. 2001) (noting "it is clear, therefore, that if a permit holder discharges pollutants precisely in accordance with the terms of its permit, the permit will 'shield' its holder from CWA liability."). In fact, the citizen suit provision of the Clean Water Act would preclude suit in that situation because the authority granted citizens to sue is only when the defendant is violating "an effluent standard or limitation under this [Act]." *Id.* § 1365.

### B. Plaintiffs' injuries are not redressable here.

The government does not conflate "the merits of the case with the showing necessary for standing." Pls.' Resp. at 18, ECF No. 16. What we argue instead is that the redressability prong of Article III standing is not so low that it is rendered meaningless. In this case, the ultimate remedy sought by Plaintiffs is the adoption of effluent limitations or monitoring requirements in the Virginia Pollutant Discharge Elimination System ("VPDES") permit VADEQ issued to Fort Belvoir. *Id.* (citing Pet. ¶¶ 99–106, ECF No. 1). Plaintiffs correctly note that, to establish redressability, they "need not show that a particular defendant is the only cause of their injury." *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 (4th Cir. 1992). However, that

statement alone does not preclude the Court from considering other sources of pollution when deciding redressability, nor does it establish the bar for when redressability has been met. As to the latter, Plaintiffs assert that "[e]ven short of obtaining all the relief sought, the Fourth Circuit has held that a realistic possibility of a partial remedy is sufficient for standing." Pls.' Resp. at 18, ECF No. 16 (citing *Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 402 (4th Cir. 2018) ("*Sierra Club*"); *Friends of Cap. Crescent Trail v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 3d 804, 815 (D. Md. 2020)).

We disagree. In *Sierra Club*, the Fourth Circuit relied on standing principles from *Townes v. Jarvis*, 577 F.3d 543, 547 (4th Cir. 2009) ("*Townes*"), where it concluded that a plaintiff could establish redressability if judicial review is a "necessary antecedent to the *ultimate* relief he seeks from a different entity, like an administrative agency." *Townes*, 577 F.3d at 547 (emphasis in original). The court explained that "to require a showing of likelihood of ultimate relief in this situation would involve courts in a speculative (if not impossible) task of predicting how an agency will exercise its discretion." *Id.* at 548. Importantly, however, the *Sierra Club* court noted "that the prospect of the plaintiff's achieving the ultimate relief he seeks is not altogether irrelevant to the issue of redressability: '[I]f no realistic possibility exists that a plaintiff can obtain the ultimate relief,' then he cannot show redressability." 898 F.3d at 401 (quoting *Townes*, 577 F.3d at 548 (internal quotation marks omitted)).

Here, there is no realistic probability of relief because remanding the permit to VADEQ is unlikely to redress Plaintiffs' injuries, all of which existed prior to Virginia issuing the permit. In particular, effluent limitations or monitoring requirements will not reduce preexisting PFAS in the Potomac, which is the source of Plaintiffs' injury. If, as Plaintiffs suggest, PFAS are harmful in any amount,[3] then there is no remedy the Court can craft because PFAS are present in the

---

[3] *See* Pls.' Resp. at 13, ECF No. 16.

4

Potomac and will be so for the foreseeable future. Even assuming arguendo that Fort Belvoir is discharging PFAS, the monitoring requirement provides no remedy because Plaintiffs—taking them at their word—will continue to be unable to use the river due to PFAS that are already there. Because there is no realistic probability of their injuries being redressed by a favorable decision here, Plaintiffs lack standing.

## II. The United States has not waived sovereign immunity to Plaintiffs' claim under the Virginia APA.

The United States recently identified its own sovereign immunity defense, which is why we requested an extension until May 6, 2026, to file this reply brief. Our intent was to put all dispositive jurisdictional motions before the Court at one time. Defs.' Mot., ECF No. 20. Though we do not fully brief that issue here, we note, contrary to Plaintiffs' assertion, that the Army did not "waive[] its sovereign immunity in administrative challenges to permit appeals under the VAPA when it voluntarily applied for and secured a VPDES permit from VDEQ." Pls.' Resp. at 23-24, ECF No. 16 (citing 33 U.S.C. § 1323(a)). An interpretation of the Clean Water Act that would subject the United States to every general state administrative law, including those that give private citizens the right to sue the federal government when challenging state administrative action, impermissibly expands the waiver of sovereign immunity enacted by Congress in 33 U.S.C. §1323. The United States will fully brief its sovereign immunity argument in a separate motion we intend to file shortly with the Court.

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion and dismiss the Complaint for lack of jurisdiction.

Respectfully submitted,

ROBERT N. TRACCI
Acting United States Attorney

5

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

Date:   April 22, 2026

/s/   *Thomas V. Hughes*
THOMAS V. HUGHES
Special Assistant United States Attorney
South Carolina Bar No. 100647
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 532-3261
Facsimile: (202) 514-8865
E-mail: thomas.hughes2@usdoj.gov

/s/  *Krista Consiglio Frith*
KRISTA CONSIGLIO FRITH
Assistant United States Attorney
Virginia State Bar No. 89088
P.O. Box 1709, Roanoke, VA 24008-1709
Tel: (540) 857-2250
Fax: (540) 857-2283
E-mail: Krista.Frith@usdoj.gov

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2026, I caused a true copy of the foregoing Memorandum in Support of the United States' Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

Claire Marie Horan
Appalachian Mountain Advocates
P.O. Box 403
Charlottesville, Virginia 22902

John D. Gilbody
Senior Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219

<u>*/s/  Thomas V. Hughes*</u>
Thomas V. Hughes
Special Assistant United States Attorney

7