IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| WILD VIRGINIA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-0100 |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES' SECOND MOTION TO DISMISS**

Defendant the United States respectfully submits this memorandum of law in support of

its second motion to dismiss under Federal Rule of Civil Procedure 12(b)(1),[1] which it bases on

sovereign immunity.

**INTRODUCTION**

The United States has not waived sovereign immunity to suit under the Clean Water Act

where there is no allegation that the government failed to comply with federal, state, or local

water control laws. Because Plaintiffs have made no such allegations, the United States is

immune and should be dismissed from the case.

As noted in the government's first motion to dismiss, the Clean Water Act ("CWA")

operates under a scheme of cooperative federalism. The Environmental Protection Agency has

authorized Virginia to administer National Pollutant Discharge Elimination System permits

within the state. Defs.' Mem., ECF No. 15, at 4-5. The Virginia Department of Environmental

Quality ("VADEQ") is the state agency responsible for issuing such permits. *Id.* Pursuant to the

---

[1] In the alternative, the United States bases its motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), for failure to state a claim against the United States.

1

Virginia State Water Control Law, private parties may challenge permits issued by VADEQ under

Virgina law when they have Article III standing and meet other statutory requirements. Va. Code

Ann. § 62.1-44.29. Such challenges must be brought under the Virginia APA. *Id.* In this case,

Plaintiffs challenge the Virginia Pollutant Discharge Elimination System ("VPDES") permit

issued to Fort Belvoir, asserting that VADEQ violated the CWA, Virginia APA, and the Virginia

State Water Control Law. Plaintiffs make no claims against and seek no remedy from the United

States. The sole reason Plaintiffs made the United States a party to this case is because Virginia

law requires it—specifically, the Virginia APA and the Rules of the Supreme Court of Virginia.

*See* Va. Code Ann. § 2.2-4026, Va. Sup. Ct. R. 2A:1(c).

The CWA's waiver of sovereign immunity is meant to ensure the United States is subject

to[2] and complies with applicable federal, state, and local water pollution control laws. That

waiver does not apply here because Plaintiffs do not allege that the United States failed to

comply with any such law.

## BACKGROUND

### I. Procedural Background.

On October 1, 2025, VADEQ issued a stormwater discharge permit to U.S. Army

Garrison Fort Belvoir—a federal military installation situated in Fairfax County, Virginia—

pursuant to the Clean Water Act (33 U.S.C. §§ 1251-1387) and the Virginia State Water Control

Law (Va. Code Ann. §§ 62.1-44.2 *et seq.*). The Plaintiffs—Wild Virginia and Potomac

Riverkeeper Network—filed a complaint against VADEQ and the United States Department of

the Army in state court asserting violations by VADEQ of the CWA, Virginia APA, and Virginia

State Water Control Law because the permit does not contain effluent limitations or a monitoring

---

[2] Here, because the United States is "subject to" state pollution control laws, the Army did what it was supposed to do – it applied for and received the required VPDES permit for stormwater discharges at Fort Belvoir. Plaintiffs make no allegations to the contrary.

requirement for per- and polyfluoroalkyl substances. ECF No. 1-2, Ex. B (Pet. for Appeal) at 2.

The United States subsequently removed the case to this Court. ECF No. 1. Importantly, the

claims in the Complaint aim solely at the permitting actions of VADEQ and not at any action of

the permittee, the U.S. Army Garrison Fort Belvoir.[3]

On March 11, 2026, the United States moved to dismiss for lack of subject-matter

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs failed to

adequately allege organizational or representational standing under Article III. Defs.' Mot., ECF

No. 14; Defs.' Mem., ECF No. 15. On April 1, 2026, Plaintiffs filed their response in opposition[4]

and, after the Court denied the United States' request for an extension, we filed our reply on

April 22, 2026.[5] That motion is pending before this Court. In our brief, we noted that we had

identified a sovereign immunity argument that we now submit for the Court's consideration. For

the reasons below, the Court should dismiss the United States from this case under Federal Rule

of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

**II. Statutory Background.**

The laws of two sovereigns are at issue in this case—the Commonwealth of Virginia and

the United States. Each is discussed in turn.

**A.  State law.**

---

[3] The specific claims of error and prayers for relief assert the following against VADEQ:
"Noncompliance with Statutory Authority and the Factual Showing Under Virginia Code§ 2.2-4027(ii): Failure to Request Disclosures of PFAS Discharges from the Applicant";
"Noncompliance with Statutory Authority and the Factual Showing Under Virginia Code§ 2.2-4027(ii): Failure to Include Monitoring Requirements for PFAS"; "Noncompliance with Statutory Authority and the Factual Showing Under Virginia Code§ 2.2-4027(ii): Failure to Include Effluent Limitations for PFAS"; and "Violation of Required Procedure Under Virginia Code § 2.2-4027(iii): Failure to Explain Basis for Decision." ECF No. 1-2, Ex. B (Pet. for Appeal) at 31-39.
[4] Pls.' Resp., ECF No. 16.
[5] Defs.' Reply, ECF No. 23.

U.S. Army Garrison Fort Belvoir was named as a defendant-party in the litigation because the Virginia APA and Rules of the Supreme Court of Virginia identify a permittee as a necessary party to all challenges to state permits.

The Virginia APA provides that challenges to agency decisions, such as VADEQ's issuance of the permit to Fort Belvoir, must be brought "in the manner provided by the Rules of Supreme Court of Virginia." Va. Code Ann. § 2.2-4026(A). The rules from the Supreme Court of Virginia in turn state that "[w]henever a case decision disposes of an application for a license, permit or other benefit, the applicant, licensee or permittee is a necessary party to any proceeding under this part." Va. Sup. Ct. R. 2A:1(c). Fort Belvoir, acting on behalf of the Army and ultimately the United States, is the permittee and thus a necessary party under those rules.[6] *Id.*

### B. Federal law.

The two primary provisions of the CWA that address the United States' waiver of sovereign immunity are colloquially referred to as the *Federal Facilities Provision*, 33 U.S.C. § 1323, and the *Citizen Suit Provision*, 33 U.S.C. § 1365. To understand the scope of the current *Federal Facilities Provision*, it is helpful to understand its historical development.

Congress's first attempt to directly address federal facilities' discharge of pollutants, and the genesis of the *Federal Facilities Provision*, was in the Federal Water Pollution Control Act Amendments of 1972. It stated, in relevant part:

> Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants shall comply with Federal, State, interstate, and local requirements respecting control and abatement of pollution to the same extent that any person is subject to such requirements, including the payment of reasonable service charges.

---

[6] Virginia law seems unique in this regard. Counsel for the United States is unaware of any other state that has a similar requirement.

Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92-500, 86 Stat. 875 (1972). In 1977, Congress amended the *Federal Facilities Provision* partially as a result of *EPA v. Cal. ex rel. State Water Res. Control Bd.*, in which the Supreme Court held that the "Federal Water Pollution Control Act Amendments of 1972 do not subject federal facilities to state NPDES permit requirements," but noted Congress could "legislate to make that intention manifest." 426 U.S. 200, 227-28 (1976).

In 1977, Congress responded by amending the *Federal Facilities Provision* "to clarify that federal facilities also had to comply with permitting requirements." *City of Wilmington v. United States*, 157 Fed. Cl. 705, 711 (2022), *aff'd*, 68 F.4th 1365, 1367 (Fed. Cir. 2023) (discussing the history of the *Federal Facilities Provision* and holding that certain fees assessed by the City of Wilmington were not "reasonable service charges" under the *Federal Facilities Provision*); *see also* S. Rep. No. 95-370, 67 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4326, 4392 ("The act has been amended to indicate unequivocally that all Federal facilities and activities are subject to all of the provisions of State and local pollution laws. Though this was the intent of the Congress in passing the 1972 Federal Water Pollution Control Act Amendments, the Supreme Court, encouraged by Federal agencies, has misconstrued the original intent."). The current version of the *Federal Facilities Provision* now states, in relevant part:

> Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement,

5

any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.

33 U.S.C. § 1323(a).

The CWA's *Citizen Suit Provision* states, in relevant part:

[A]ny citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States … who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a).

## LEGAL STANDARD

Sovereign immunity is a jurisdictional bar that deprives federal courts of subject-matter jurisdiction. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018); *see FDIC v. Meyer*, 510 U.S. 471, 475 (1994). It is a plaintiff's "burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). If the United States has not waived sovereign immunity, "a plaintiff's claim against the United States should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure

6

12(b)(1)." *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011) (citing *Williams v.*

*United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

Where there is no waiver of sovereign immunity as to the United States in a removed

case the district court should dismiss the United States as a party and remand the remaining

claims against any non-federal defendants back to state court. *See Palmer v. City Nat'l Bank*, 498

F.3d 236, 239 (4th Cir. 2007) (affirming a district court's dismissal of a third-party complaint

against federal defendants based on sovereign immunity and remanding remaining claims to state

court); *see also Nielsen v. Miller*, No. 3:20-cv-00064, 2021 U.S. Dist. LEXIS 93369, at *5-8

(W.D. Va. May 17, 2021) (dismissing a defendant federal agency on the basis of sovereign

immunity and remanding the case to state court).

## ARGUMENT

### I.  **The *Federal Facilities Provision* Does Not Waive Sovereign Immunity to Plaintiffs' Claims.**

The *Federal Facilities Provision* does not waive the federal government's sovereign

immunity in this case because there is no allegation here that the federal government failed to

comply with a federal, state, or local requirement respecting the control and abatement of water

pollution. Nor does the immunity waiver in the *Citizen Suit Provision* apply here because

Plaintiffs do not allege that the Army is "in violation" of a relevant effluent standard or

limitation. 33 U.S.C. § 1365(a)(1).

"As a sovereign, the United States is immune from all suits against it absent an express

waiver of its immunity." *Welch v. United States*, 409 F.3d at 650 (citing *United States v.*

*Sherwood*, 312 U.S. 584, 586 (1941)). A valid waiver of sovereign immunity must be

"unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). A waiver

will not be implied, and a waiver of the government's sovereign immunity "will be strictly

construed, in terms of its scope, in favor of the sovereign." *Id.* Thus, where there is a plausible reading of a statute that preserves sovereign immunity, the reviewing court must find that immunity has not been waived. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992). As the Supreme Court has dictated, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity . . . so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (citations omitted).

Congress enacted the relevant portions of the *Federal Facilities Provision* to ensure that federal facilities comply with relevant state and local requirements. It waives the United States' sovereign immunity only to certain claims alleging that the United States (or its departments and officers) are not in compliance with federal, state, local or administrative requirements "respecting the control and abatement of water pollution" at its facilities. 33 U.S.C. § 1323(a). Here, there is no claim against the United States and, therefore, no waiver of sovereign immunity. Plaintiffs solely assert that *VADEQ* (not the United States) violated the CWA, the Virginia Water Control Law, and Virginia APA when it did not include specific monitoring requirements and effluent limitations in the VPDES permit it issued to Fort Belvoir. Pls.' Resp. at 18, ECF No. 16 (citing Pet. ¶¶ 99–106). Indeed, Plaintiffs make no direct claims against the federal government at all.

Thus, on the face of the Complaint, there is no claim against the United States that falls within the waiver of sovereign immunity in the *Federal Facilities Provision* (or the *Citizen Suit Provision*). Concluding otherwise would impermissibly expand that waiver of immunity beyond the text of the statute. *See FAA v. Cooper*, 566 U.S. at 290 (noting that courts may not "enlarge[] [the waiver] beyond what a fair reading of the text requires").

8

Even if the Court were to conclude that the scope of the waiver in the *Federal Facilities Provision* is unclear, the result would be the same—absent an unambiguous waiver, the Court must conclude that the United States is immune from suit. Because Plaintiffs' allegations fall outside the scope of the *Federal Facilities Provision* and any other relevant waiver of immunity, the Court should dismiss the United States from this suit.[7]

Last, a determination that the government has not waived sovereign immunity in this case would not frustrate the purpose of the *Federal Facilities Provision*. The government would still be subject to the administration and enforcement of the CWA's National Pollutant Discharge Elimination System permitting program by the Commonwealth pursuant to the federal authorization; it would still be required to comply with the VPDES permits issued by the Commonwealth; and it would still be subject to a citizen suit under 33 U.S.C. § 1365 if it violated the terms of its permit and the State failed to demand compliance.

## II.  The United States Should Be Dismissed and the Case Remanded to State Court.

The *Federal Facilities Provision* does not make the United States amenable to suit where Plaintiffs have neither alleged any claims against, nor sought any remedy from, the United States. Accordingly, the United States should be dismissed from this case and the claims against the VADEQ remanded to state court.

---

[7] The United States also notes that the *Federal Facilities Provision* protects the federal government's right to remove suits from state to federal court under federal law. 33 U.S.C. § 1323(a). If the Court were to find that the federal government *has* waived sovereign immunity to suit in this case, but that the Commonwealth *has not* waived sovereign immunity to have this case heard in federal court (as they argued in prior filings), and the Court remanded to state court on that basis, doing so would effectively nullify the portion of the *Federal Facilities Provision* that states: "Nothing in this section shall be construed to prevent" a federal agency or officer "from removing to the appropriate Federal district court any proceeding to which the [agency or officer] is subject pursuant to this section, and any such proceeding may be removed in accordance with section 1441 et seq. of Title 28." 33 U.S.C. § 1323(a). Because Congress specifically directed that nothing in the *Federal Facilities Provision* shall prevent removal, the Court should avoid any such interpretation in this case.

"The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012) (quoting *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922)). Importantly, "Congress has specifically abrogated the doctrine of derivative jurisdiction in cases removed under 28 U.S.C. § 1441, but it has not done so with respect to actions removed under 28 U.S.C. § 1442." *Id.* at 286 n.2.

While this case is unusual in that there are no direct claims against the United States, the doctrine of derivative jurisdiction as applied in *Palmer*, 498 F.3d at 239, and *Nielsen*, 2021 U.S. Dist. LEXIS 93369, at *5-8, indicates that the appropriate remedy is for the Court to dismiss the United States as a party and remand the case to state court. Doing so would also be consistent with 28 U.S.C. § 1447, which states the case "shall be remanded" if before final judgment the district court determines that it lacks subject-matter jurisdiction.

In short, where the state court lacks subject-matter jurisdiction with respect to the United States based on sovereign immunity, this Court on removal similarly lacks subject-matter jurisdiction with respect to the United States. As such, dismissal of the United States from this suit is appropriate.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion, dismiss the United States from this matter for lack of subject-matter jurisdiction, and remand the claims against the Commonwealth back to state court.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General


Date:  June 10, 2026                    /s/   Thomas V. Hughes
                                        THOMAS V. HUGHES
                                        Special Assistant United States Attorney
                                        South Carolina Bar No. 100647
                                        Environment & Natural Resources Division
                                        Environmental Defense Section
                                        P.O. Box 7611
                                        Washington, D.C. 20044
                                        Telephone: (202) 532-3261
                                        Facsimile: (202) 514-8865
                                        E-mail: thomas.hughes2@usdoj.gov

                                        /s/  Krista Consiglio Frith
                                        KRISTA CONSIGLIO FRITH
                                        Assistant United States Attorney
                                        Virginia State Bar No. 89088
                                        P.O. Box 1709, Roanoke, VA 24008-1709
                                        Tel: (540) 857-2250
                                        Fax: (540) 857-2283
                                        Krista.Frith@usdoj.gov

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026, I caused a true copy of the foregoing Memorandum of Law in Support of Second Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

Claire Marie Horan
Appalachian Mountain Advocates
P.O. Box 403
Charlottesville, Virginia 22902

John D. Gilbody
Senior Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219

*/s/  Thomas V. Hughes*

Thomas V. Hughes
Special Assistant United States Attorney

12