IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| WILD VIRGINIA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-0100 |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

Defendant the United States respectfully submits this Memorandum of Law in further

support of its Second Motion to Dismiss based on sovereign immunity.

**INTRODUCTION**

On June 10, 2026, the government filed its motion to dismiss for lack of subject matter

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the waiver of

sovereign immunity in the *Federal Facilities Provision* of the Clean Water Act, 33 U.S.C. §

1323(a), does not extend to suits by private parties where there is no allegation that the federal

government failed to comply with a federal, state, or local requirement respecting the control and

abatement of water pollution. ECF No. 24. Plaintiffs' opposition, Pls.' Resp., ECF No. 26, floats

several theories but ultimately fails to show that Congress unequivocally waived the

government's immunity to suit where there is no allegation of noncompliance by the United

States. But even if Plaintiffs had made such a showing, the Federal Facilities Provision does not

waive sovereign immunity to state judicial-review mechanisms, as demonstrated by a recent

decision from the Tenth Circuit Court of Appeals. The Court should grant the United States'

Motion.

1

## ARGUMENT

**I. The *Federal Facilities Provision* does not waive the government's immunity to suit where there is no allegation of noncompliance.**

In spite of the hyperbole in Plaintiffs' opposition brief, *see* Pls.' Resp. at 1, the argument we laid out in our Second Motion to Dismiss is unremarkable: the Clean Water Act does not subject the United States to suit where there is no allegation that the government failed to comply with state or federal law. Although Plaintiffs posit in a footnote that their claim actually alleges noncompliance by the government, Pls.' Resp. at 8 n.3, that theory is nonsensical. Plaintiffs' grievance is not with the Army, it is with Virginia DEQ. *See id.* at 12 ("Plaintiffs are challenging VDEQ's permit[.]"). They seek no relief from the Army. And the Army did not issue itself the permit that is the entire subject of Plaintiffs' claim and forms any conceivable case or controversy here.

It is a fundamental tenet of administrative law, plus a necessary component of Article III standing, that the proper defendant in the case of permit issuance is the agency that issued the permit. Absent a violation of that permit by the permittee, a plaintiff has no standalone cause of action against the permittee, no injury caused by the permittee, and no redressability. Thus, even if there were a valid waiver of sovereign immunity here, Plaintiffs could not sue the Army alone for obtaining a permit from the Commonwealth. The existence of the *Federal Facilities Provision* does not change that unremarkable fact.

Plaintiffs' arguments to the contrary come up short. Although Plaintiffs spend time parsing the language of 33 U.S.C. § 1323(a), that exercise ignores the fact that the *Federal Facilities Provision* is a waiver of both sovereign immunity (subjecting the United States to suit) and intergovernmental immunity (subjecting the government to state and local regulation). Much of the provision's language describes the latter. *See* Pls.' Resp. at 6 (addressing "administrative authority" and "requirement[s] respecting permits"). But the question here is not what state

2

permitting requirements the federal government needs to follow. Rather, the question is whether

Congress plainly and unequivocally waived sovereign immunity to subject the United States to

suit when there is no allegation that the federal government did anything wrong. The *Federal*

*Facilities Provision*'s plain focus on compliance makes it clear that Congress did not. But even if

the language were ambiguous, the Court must read the provision in favor of the United States.

*See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign

immunity must be unequivocally expressed in statutory text" and "will be strictly construed, in

terms of its scope, in favor of the sovereign."); *United States v. Williams*, 514 U.S. 527, 531

(1995) (when confronted with a purported waiver of federal sovereign immunity, courts must

"constru[e] ambiguities in favor of immunity"). In the end, nothing in Plaintiffs' brief or the

language of 33 U.S.C. § 1323(a) establishes that Congress unequivocally waived sovereign

immunity to suit where there is no allegation that the federal government failed to comply with a

federal, state, or local requirement respecting the control and abatement of water pollution.

**II.  The *Federal Facilities Provision* does not waive sovereign immunity to suit under state law judicial-review provisions for permitting challenges.**

Even if the Court does not dismiss the Army as a defendant based on the forgoing, it

should do so because the Clean Water Act's *Federal Facilities Provision*—like the nearly

identical provision in the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §

6961(a)—does not waive immunity to subject the United States to state judicial-review

provisions. *See United States v. New Mexico Env't Dept.* ("*NMED*"), No. 22-2132, 2026 WL

1733641, at *1 (10th Cir. June 16, 2026).

To review, the *Federal Facilities Provision* states as follows, in relevant part:

> Each department, agency, or instrumentality of the executive, legislative,
> and judicial branches of the Federal Government (1) having jurisdiction
> over any property or facility, or (2) engaged in any activity resulting, or
> which may result, in the discharge or runoff of pollutants, . . . , shall be
> subject to, and comply with, all Federal, State, interstate, and local

> requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity . . . . The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.

33 U.S.C. § 1323(a).

The analogous provision in RCRA states as follows, in relevant part:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements . . . . The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines, regardless of whether such penalties or fines are punitive or coercive in nature or are imposed for isolated, intermittent, or continuing violations.

42 U.S.C. § 6961(a).

In *NMED*, the Tenth Circuit held "that state judicial-review provisions are not procedural requirements under [42 U.S.C.] § 6961(a)." *Id.* Because the language of the *Federal Facilities Provision* is nearly identical to 42 U.S.C. § 6961(a) in all relevant respects here, *see id.* at *7, this Court should likewise conclude that Virginia's judicial-review mechanisms for permitting challenges are not procedural requirements respecting the control and abatement of water pollution for the purposes of 33 U.S.C. § 1323(a) and, thus, the Army is not subject to Plaintiffs' claim here.

The Tenth Circuit in *NMED* heard an appeal that arose from a state permitting dispute. The State of New Mexico issued a RCRA permit to Cannon Air Force Base in New Mexico. 2026 WL 1733641 at *2. As the Clean Water Act allows authorized states to administer National Pollutant Discharge Elimination System permits, so too does RCRA allow states, such as New Mexico, that have received EPA approval to administer their own hazardous-waste disposal regimes. *Id.* The State permit designated perfluoroalkyl substances ("PFAS") as a hazardous waste requiring a cleanup action. *Id.* The United States sued NMED in federal district court, asserting that the State had exceeded its authority by including PFAS in the RCRA permit. *Id.* at *3.

The district court determined that it lacked jurisdiction because it concluded that the judicial review provision of the State's Hazardous Waste Act, which vests the New Mexico Court of Appeals with exclusive jurisdiction over disputes regarding permitting decisions under that Act, qualified as a "procedural" requirement "respecting control and abatement of solid waste or hazardous waste disposal and management" within the meaning of 42 U.S.C. § 6961(a). 2026 WL 1733641 at *3. Thus, the district court held that the United States was subject to the exclusive jurisdiction of the New Mexico Court of Appeals, and its suit had to proceed in State court. *Id.* at *3-4.

The Tenth Circuit reversed. Although the court assumed arguendo that the district court's reading of 42 U.S.C. § 6961(a) was plausible, it explained that "it is not the *only* plausible reading of that statute." 2026 WL 1733641 at *6. The provision makes clear that states can enforce permits against federal facilities, "but it does not inescapably follow . . . [that the] procedural-requirements language *must* be read to include state judicial-review mechanisms." *Id.* Instead, the court concluded that the "procedural requirements" language in RCRA's waiver of sovereign immunity "refers to . . . state's procedural mechanisms—like permitting regimes—for

enforcing the substantive environmental standards of the state, and not to the state's judicial-review mechanisms." *Id.* Although the court was interpreting RCRA so as to harmonize it with 28 U.S.C. § 1345, the court's analysis was functionally the same one that courts undertake in interpreting waivers of sovereign immunity—if there is a plausible reading against the waiver, then a court must rule in the government's favor. *See Williams*, 514 U.S. at 531; *United States v. Nordic Village, Inc.*, 503 U.S. 30, 35-37 (1992).

Given the similarity between the relevant provision of RCRA and the judicial-review provision of New Mexico law, on the one hand, and the Clean Water Act's Federal Facility Provision and the Virginia's APA's judicial-review provision, on the other, this Court should follow the Tenth Circuit and find that the Virginia APA's judicial review provision is not a procedural requirement within the meaning of 33 U.S.C. § 1323(a) and, thus, sovereign immunity is not waived here.

In their opposition brief, Plaintiffs contend that the Court should reject the United States' interpretation because the *Federal Facilities Provision* subjects the federal government to water pollution control and abatement requirements and process "in the same manner, and to the same extend as any nongovernmental entity[.]" Pls.' Resp. at 9. As the *NMED* court correctly concluded, however, a state's judicial-review mechanism is not a procedural requirement in the first place. Thus, the "same manner" language is inapplicable.[1]

Indeed, the *NMED* court's interpretation is even more sensible in the context of this case. In contrast to the New Mexico Hazardous Waste Act—which in large part plainly addresses the

---

[1] Plaintiffs contend that adopting the United States' position will mean that the Clean Water Act's waiver of sovereign immunity will "apply differently to federal permittees based only on different permitting authorities' procedural rules." Pls.' Resp. at 13. But that argument is nonsensical. In fact, it is Plaintiffs' untenable reading of the *Federal Facilities Provision* that would result in disparate treatment of the United States by subjecting the United States to a lawsuit as a permittee-defendant when there is no allegation that the government did anything wrong.

control and abatement of hazardous waste within the meaning of 42 U.S.C. § 6961(a)—the

Virginia APA is a "default or catch-all source of administrative due process" used by state

agencies where "basic law fails to provide process." *Loudoun Cty. Sch. Bd. v. Commonwealth

Bd. of Educ.*, 45 Va. App. 466, 471 (2005). Thus, the Virginia APA requirement that permit

challenges must be brought as provided in the Rules of the Supreme Court of Virginia, with the

attendant statement in those Rules identifying a permittee as a necessary party is even more

clearly a state judicial-review requirement that falls outside the scope of the Federal Facility

Provision's waiver of sovereign immunity.

    Finally, although Plaintiffs suggest that dismissing the Army from this case will somehow

allow Virginia DEQ's permit to "escape judicial review," *see* Pls.' Resp. at 12, that is simply not

the case. Plaintiffs can obtain review of the permit by proceeding against Virginia DEQ on

remand to state court (unless the case is dismissed for lack of standing).

<b>CONCLUSION</b>

    For the foregoing reasons, the United States respectfully requests that the Court grant its

Motion and dismiss the United States from this case for lack of jurisdiction.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

Date:  <u>July 1, 2026</u>

<u>/s/  Thomas V. Hughes</u>
THOMAS V. HUGHES
Special Assistant United States Attorney
South Carolina Bar No. 100647
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 532-3261
Facsimile: (202) 514-8865
E-mail: thomas.hughes2@usdoj.gov

7

/s/ *Laura Day Taylor*
LAURA DAY TAYLOR
Assistant United States Attorney
Virginia State Bar No. 94021
Illinois State Bar No. 6289334
P. O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile: (540) 857-2283
E-mail: Laura.Taylor@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, I caused a true copy of the foregoing Reply Memorandum in Support of the United States' Second Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

Claire Marie Horan
Appalachian Mountain Advocates
P.O. Box 403
Charlottesville, Virginia 22902

John D. Gilbody
Senior Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219

*/s/  Thomas V. Hughes*
Thomas V. Hughes
Special Assistant United States Attorney

9