CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 24, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Wild Virginia<br><br>and<br><br>Potomac Riverkeeper Network,<br><br>Plaintiffs,<br><br>v.<br><br>Virginia Department of Environmental Quality<br><br>and<br><br>United States Department of the Army,<br><br>Defendants. | ) | Civil Action No. 3:25-cv-00100 |

**MEMORANDUM OPINION**

## I. Background

In this dispute, Plaintiffs Wild Virginia and Potomac Riverkeeper Network ("PRKN") challenge Defendant Virginia Department of Environmental Quality's ("DEQ") issuance of a permit to Defendant United States Department of the Army's ("United States") Fort Belvoir without any effluent limitations or monitoring requirements concerning per- and polyfluoroalkyl substances ("PFAS"). (Pet. for Appeal at 2. (Dkt. 1-2).) The Defendants previously filed motions to dismiss under Rule 12(b)(1), (Dkts. 10, 14, 24), which the court dismissed as premature pending briefing on whether it had jurisdiction to grant the remedy

the Plaintiffs request. (Dkt. 33.) This matter is now before the court pursuant to its supplemental briefing order. (*Id.*)

For the following reasons, the court will dismiss the United States as a defendant and remand the remaining claims to Charlottesville Circuit Court.

## II. Analysis

### A. Federalism principles do not strip this court of jurisdiction.

Several potential jurisdictional defects have been raised to the court, any one of which could be fatal to the court's jurisdiction. (*See* DEQ Mot. to Dismiss at 7–11 (Dkt. 11); U.S. First Mot. to Dismiss at 9–14 (Dkt. 15); U.S. Reply to First Mot. to Dismiss at 2–5 (Dkt. 23) (all arguing the Plaintiffs lack standing); DEQ Mot. to Dismiss at 11–12 (Dkt. 11); U.S. Second Mot. to Dismiss at 7–9 (Dkt. 25) (arguing that the respective Defendants enjoy sovereign immunity).) The court also raised its own jurisdictional concern: that granting the relief requested might violate fundamental principles of federalism. (Dkt. 33 at 3–4.) The court will address this threshold federalism issue first.

Federal district courts have limited subject matter jurisdiction; they may exercise "only the jurisdiction authorized them by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.2009) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Bowles v. Russell*, 551 U.S. 205, 212 (2007)). Because of their limited jurisdiction, "[f]ederal district courts . . . [have] no power to sit as appellate tribunals over state court or administrative proceedings." *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 387 (4th Cir. 2000). "[C]ross-system appeals from state courts to

federal courts are not contemplated by our system of federalism." *Id.* at 386. As a result, "[f]ederal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions." *Id.* at 387.

In this case, Plaintiffs request several forms of relief, including that the court

a) declare that DEQ's decision not to address PFAS was not supported by substantial evidence in the record;

b) remand the matter to DEQ with directions to reach a determination on the need for monitoring requirements and effluent limitations for PFAS that is supported by substantial evidence in the record, including any additional evidence adduced on remand, including by requesting it from Fort Belvoir; [and]

c) suspend or set aside the Final Permit[.]

(Pet. for App. ¶ 121 (Dkt. 1-2).) Accordingly, the court asked the parties to brief the issue of whether this action is a "cross-system appeal," in violation of the jurisdiction of a federal district court. *Kirkpatrick*, 216 F.3d at 387. All parties argue the court does indeed have jurisdiction, at least with respect to this federalism concern. (Pls.' Suppl. Br. at 3–4 (Dkt. 37); U.S. Suppl. Br. at 3–6 (Dkt. 39); DEQ Suppl. Br. at 1–2 (Dkt. 40).)

For this court to have subject matter jurisdiction, the Plaintiffs must prove by a preponderance of the evidence that both the Constitution and federal law have authorized it. *Jadhav*, 555 F.3d at 347; *Earl v. Taylor*, No. 1:20-CV-01355, 2021 WL 4458930, at *2 (D. Md. Sep. 29, 2021). The Plaintiffs allege that the Constitution authorizes subject matter jurisdiction in at least three different ways: (1) because the United States is a party, (Pls.' Suppl. Br. at 3); U.S. Const. art. III, § 2, cl. 1; (2) because the United States has asserted the federal defense of sovereign immunity, (Pls.' Suppl. Br. at 3); *Mesa v. California*, 489 U.S. 121, 136 (1989); and (3)

because federal law is an "ingredient" of the claims at issue for the purposes of constitutional "arising under" jurisdiction, (Pls.' Suppl. Br. at 3); *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 823 (1824). However, the Plaintiffs only point to a single statutory basis for federal court jurisdiction: 28 U.S.C. §1442(a)(1). (Pls.' Suppl. Br. at 4.) Section 1442(a)(1) provides that "[a] civil action . . . that is commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof" may be removed to the relevant federal district court. *Id.*

The first two constitutional bases for jurisdiction and the only asserted statutory basis for jurisdiction depend on the United States' presence as a party to this action. But the United States' continued presence is contested. Though the Plaintiffs were required to include the United States as a Defendant in this action under the Rules of the Supreme Court of Virginia, (*see* Dkt. 33 at 2 n.1), the United States argues that it has sovereign immunity and must now be dismissed from suit, (U.S. Suppl. Br. at 2–3). The court initially declined to address this argument because of the primacy of its federalism concerns. (Dkt. 33 at 4 & n.4.) However, given the relatedness of the parties' federalism arguments and the United States' sovereign immunity claim, the court will address this fully-briefed issue *sua sponte* as it resolves its federalism concerns. *See Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at *2 (S.D.W. Va. May 1, 2013).

1. Removal was proper under 28 U.S.C. §1442(a)(1).

The judicial review provisions of the Virginia Administrative Process Act ("VAPA"), Va. Code Ann. §§ 2.2-4000–2.2-4031, provide that an aggrieved party "shall have a right to the direct review [of a case decision] by an appropriate and timely court action against the

agency or its officers or agents in the manner provided by the Rules of Supreme Court of Virginia." *Id.* § 2.2-4026(A); (Pet. for App. ¶ 32.) Further, the VAPA provides that actions are to be initiated in "any court of competent jurisdiction as provided in § 2.2-4003" and are "subject to appeal to or review by higher courts as in other cases unless otherwise provided by law." Va. Code Ann. § 2.2-4026(A). Under these provisions, the Plaintiffs' initial suit in Charlottesville Circuit Court was properly brought.[1] *Id.* §§ 2.2-4003, 4026(A).

The United States enjoys a nearly "absolute" right to remove cases against it to federal court under 28 U.S.C. §1442. *North Carolina ex rel. Biser v. United States*, 7 F.4th 160, 163 (4th Cir. 2021); *Kolibash v. Comm. on Legal Ethics of the W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989); *Arizona v. Manypenny*, 451 U.S 232, 242 (1981). Further, the Fourth Circuit has held that the United States' assertion of sovereign immunity "squarely implicates § 1442(a)(1)'s core purpose." *Biser*, 7 F.4th at 163. At the outset, then, the court finds removal to this court was proper: the United States' presence as a defendant and its assertion of sovereign immunity as a defense provide both a constitutional and a statutory basis for federal court jurisdiction. *See* U.S. Const. art. III, § 2, cl. 1; *Mesa*, 489 U.S. at 136; 28 U.S.C. § 1442(a)(1).

2. <u>The court's jurisdiction reaches the remedy requested.</u>

Since the suit was initially brought in the proper venue and removal was proper, whether this court could effectuate the remedy requested depends on the nature of the

---

[1] Under § 2.2-4003, "[i]n actions for review of, appeal from, or enforcement of state administrative regulations, decisions, or other orders . . . [i]f the moving or aggrieved party is other than the Commonwealth or an agency thereof," then the suit is to be initiated in the county or city where the moving party resides, "[r]egularly or systematically conducts affairs or business activity," or "[w]herein such party's property affected by the administrative action is located." *Id.* Here, moving party Wild Virginia "resides in and maintains an office in the City of Charlottesville from which it regularly and systematically conducts its affairs." (Pet. for App. ¶ 35.)

jurisdiction exercised. The Supreme Court has explained that federal officer removal under § 1442(a)(1) is meant to "ensure a federal forum," without "enlarging nor contracting the rights of the parties" as defined under state law. *Manypenny*, 451 U.S. at 241–42. Indeed, "the invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied." *Id.* at 242; *see id.* at 242 n.17 (suggesting that federal jurisdiction is determined by the extent of state jurisdiction in a federal officer removal case where "relevant state-court jurisdiction is found to exist and the question is whether the federal court in effect loses such jurisdiction as a result of removal").

The Fourth Circuit has applied this principle to hold that a district court retains jurisdiction over cases that are removed under § 1442(a)(1), even those "implicat[ing] significant state interests." *See Kolibash,* 872 F.2d at 575. A petition for appeal under the VAPA squarely fits this mold. Wild Virginia and PRKN move, pursuant to this state statute, for review of a state administrative action, alleging several violations of state law.[2] (*See generally* Pet. for App.) They seek the remedies that a state court would be able to provide in this case. (*See* Pet. for App. ¶¶ 98, 102, 107, 114, 121); Va. Code Ann. § 2.2-4029. Having successfully removed under § 1442(a)(1), the Defendants have essentially transferred the jurisdiction of the state court to this court.

Thus, this suit does not violate the fundamental principle that federal district courts lack "power to sit as appellate tribunals over state court or administrative proceedings."

[2] Plaintiffs also allege violations of the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*, since the federal statute allowed the creation of the VPDES scheme under which DEQ issued the relevant permit. (Pet. for App. ¶¶ 36–38, 88–89.) However, all of Plaintiffs' prayers for relief are made pursuant to state law. (*See id.,* Claims of Error &Prayers for Relief.)

*Kirkpatrick*, 216 F.3d at 387. *Kirkpatrick* distinguished between an appeal of a state agency judgment and a separate, original civil action to review that judgment. *See id.* at 383. In *Kirkpatrick*, an original civil action was filed in the first instance before the federal district court, following the exhaustion of administrative remedies, as "an *external* check on the state administrative action." *Id.* at 383–84, 387. On the other hand, a court hearing an appeal would be "limited to reviewing the record that ha[d] been developed below" and to the "parameters of the remedies issued by the state administrative agency below." *Id.* at 384.

Because this court's jurisdiction is defined by that of the state court, the court has jurisdiction to rule on the removed suit regardless of which category it would fall into under *Kirkpatrick*'s reasoning. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 233–34, 239 (2007) (confirming the application of derivative jurisdiction in cases that are removed under § 1442(a)(1) by upholding remand from a district court which concluded it lacked jurisdiction under state-law jurisdiction principles). This is not a federal action which might be a state appeal in disguise, *see Kirkpatrick,* 216 F.3d at 385; rather, it is a state court action properly removed to federal court for the application of state substantive law, subject to the "impartial setting" provided by federal procedure, *Manypenny*, 451 U.S. 241–42. Under the derivative jurisdiction of § 1442(a)(1), this court has the authority to implement the requested relief.

**B. The United States must be dismissed.**

The United States argues that it has sovereign immunity and must be dismissed from suit under Federal Rule of Civil Procedure 12(b)(1). (*See generally* U.S. Second Mot. to Dismiss, U.S. Suppl. Br.) In the alternative, the United States styles its motion to dismiss as one under

Rule 12(b)(6), arguing that the Plaintiffs have failed to state a claim. (U.S. Second Mot. to Dismiss at 1 n.1.) For the reasons that follow, the court will dismiss the United States from suit under Rule 12(b)(6).

1. The doctrine of sovereign immunity is not implicated by the United States' arguments.

The United States brought its second motion to dismiss under Rule 12(b)(1) because its arguments are framed in terms of sovereign immunity, a jurisdictional issue. (*See generally*, *id.*) It has long been settled that the United States cannot be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Accordingly, the Plaintiffs point to the Clean Water Act's waiver of sovereign immunity, 33 U.S.C. § 1323, and argue that the United States has consented to suit in these circumstances. (Pet. for App. ¶ 33.) The United States acknowledges that such a waiver exists but argues it does not apply to the facts at bar. (U.S. Second Mot. to Dismiss at 7–9.)

However, the United States' argument that the Federal Facilities Provision of the Clean Water Act does not waive its immunity rests primarily on a single contention: that "[the] Plaintiffs make no direct claims against the federal government at all." (*Id.* at 8.) But this argument is not about the scope of sovereign immunity. The appropriate sovereign immunity argument would address the types of suits and remedies to which the United States has consented.[3] Here, the United States does not—and cannot—claim that it has not consented

[3] Many courts have addressed the scope of waivers of the United States' sovereign immunity. Their decisions generally focus on whether a particular remedy can be applied against the United States once an unequivocal waiver of sovereign immunity has been established. 14 *Wright & Miller's Federal Practice & Procedure* § 3654 (4th ed. 2026); *see also Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 94 (1st Cir. 2012) (Clean Water Act did not "authorize civil tort actions against the federal government for damages"); *Obando-Segura v. Garland*, 999 F.3d 190, 192–93 (4th Cir. 2021) (considering whether the United States had consented to being required to pay attorney's fees); *Maksymchuk v. Frank*, 987 F.2d 1072, 1076 (4th Cir. 1993) (considering whether the United States had waived sovereign immunity with respect to awards of pre-judgment

to a particular remedy being taken against it because no remedy is sought against it.[4] (Pet. for App. ¶¶ 98, 102, 107, 114, 121.)

2. The Plaintiffs do not state a claim against the United States.

Though framed in terms of immunity, the crux of the United States' argument is that the Plaintiffs failed to assert any claims against it since the Plaintiffs neither assert that the United States has engaged in any wrongdoing nor request any relief against it. (*See* U.S. Second Mot. to Dismiss at 1–2.) The court agrees.

i. *Standard of Review*

Motions to dismiss under Rule 12(b)(6) "test the legal sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In

interest); *Gatlin Oil Co., Inc. v. United States*, 169 F.3d 207, 213–14 (4th Cir. 1999) (considering whether the United States had waived sovereign immunity regarding awards of post-judgment interest); *Baker v. Runyon*, 114 F.3d 668, 670–72 (7th Cir. 1997) (considering whether the United States had consented to the imposition of punitive damages against it).

[4] The Plaintiffs do seek relief which would impact the United States; they request that the court "suspend or set aside the Final Permit" that Fort Belvoir has been awarded. (Pet. for App. ¶¶ 98, 102, 107, 114, 121.) Though the permit's revocation would impact the United States, it would undo DEQ's action. Perhaps the United States' interest in defending this permit would allow it to intervene in a suit in which it was not a necessary party. However, the court does not take up that question, since the United States was only added to the suit as a necessary party under state law.

reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

*ii. Application*

Here, the Plaintiffs make no claim that the United States is violating the terms of the permit that it received. (*See* Pls.' Br. at 2 n.2 (Dkt. 26) (noting that "this is a challenge to the lawfulness of the NPDES industrial stormwater permit that [DEQ] issued to the [United States]" and that "[t]he issuance of a permit allowing such activity generally acts as a 'permit shield' such that citizens' main recourse is to challenge the permit that allows the polluting discharges"). When a complaint "makes no specific allegations of wrongdoing attributable to [a particular] defendant[]," it fails to state a claim upon which relief can be granted. *Campbell v. Kershaw Corr. Inst.*, No. CA 2:12-395, 2012 WL 1677035, at *3 (D.S.C. Apr. 9, 2012), *adopted by* No. CA 2:12-395, 2012 WL 1677037 (D.S.C. May 14, 2012).

Plaintiffs argue that though they challenge DEQ's permitting decision, they have still alleged that the United States is engaged in wrongdoing. They argue that "[a]lthough the Clean Water Act's permit shield may prevent [the] Plaintiffs from bringing claims against Fort Belvoir for its PFAS discharges, an unlawful permit does not render the Army's activities compliant with the Clean Water Act." (Pls.' Br. at 8 n.3.) This nuance makes no difference under 12(b)(6). Rule 12(b)(6) requires not just the existence of wrongdoing but the assertion of a plausible claim for relief from wrongdoing. *See Cohen v. Gruber*, No. CR GLR-14-0310, 2019 WL 4325195, at *7 (D. Md. Sept. 11, 2019), *aff'd*, 855 F. App'x 139 (4th Cir. 2021) ("Mere

naked assertions of wrongdoing are generally insufficient to state a claim for relief." (cleaned up) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Plaintiffs also admit that the permit shield regime of the Clean Water Act prevents them from suing the United States to challenge their receipt of an allegedly unlawful permit. (Pls.' Br. at 8 n.3); 33 U.S.C. § 1342(k); *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.,* 268 F. 3d 255, 269 (4th Cir. 2001). They offer no factual allegations to state a plausible claim for relief against the United States, nor do they offer any other theory that would allow for a remedy against the United States.

Further, Plaintiffs ask for no relief against the United States. (*See* Pet. for App. ¶¶ 98, 102, 107, 114, 121); *see also Mason v. Johnson*, No. C.A.0:091189, 2009 WL 1940813, at *4 (D.S.C. June 30, 2009) ("Moreover, Plaintiff's Complaint fails to state a claim on which relief may be granted because it does not ask for any relief.") Though the court's actions might impact the permit held by the United States,[5] Plaintiffs' requested relief is aimed at DEQ. (*See* Pet. for App. ¶¶ 98, 102, 107, 114, 121.) If the United States desires not to defend against the incidental impacts that relief against DEQ may have on its permit, it is not required to do so. Thus, the United States will be dismissed from suit under 12(b)(6).[6]

---

[5] *See supra* note 4.

[6] Though the United States was a necessary party to this suit under Virginia Supreme Court Rule 2A:1(c), this court does not view its dismissal as inherently requiring dismissal of the whole suit. While the state court may take up the question of whether the United States constituted an indispensable party or merely a necessary one under Virginia law, this court does not reach that issue. *See Metts v. Va. Cmty. Coll. Sys.,* No. 1627-23-2, 2025 WL 756930, at *2 (Va. Ct. App. Mar. 11, 2025); *Marble Techs., Inc. v. Mallon*, 773 S.E.2d 155, 157 (Va. 2015).

**C. The remaining claims will be remanded.**

The only complete bases that the Plaintiffs offer for this court's jurisdiction—that is, combinations of both constitutional and statutory authority for federal jurisdiction—rely upon the United States' presence as a Defendant. (Pls.' Br. at 3–4 (Dkt. 37).) Yet the United States will be dismissed from this action. Nonetheless, this court has discretion regarding the proper forum for this suit. *See Lewis v. United States*, 131 A.F.T.R.2d 2023-1604, 2023 WL 3304890, *5 (D. Md. 2023) (explaining that federal officer removal gives a district court jurisdiction over "the entire civil action," including "state law claims against nonfederal defendants," and that 28 U.S.C. § 1442(a) "effectively allows a district court to exercise a species of statutorily-mandated supplemental subject-matter jurisdiction over those other claims" even after the federal defendant is dismissed (cleaned up)); *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132–33 (D.C. Cir. 1985) (per curiam); *McNeil v. Duncan*, No. 19-694, 2022 WL 2785970, at *5 (D.D.C. July 15, 2022).

In deciding whether to remand, the court must look to "considerations of comity, federalism, judicial economy, and fairness to litigants." 14C *Wright & Miller's Federal Practice & Procedure* § 3726 (4th ed. 2026); *see also Wood v. Crane Co.*, 764 F.3d 316, 320 n.4 (4th Cir. 2014) (noting the same factors). Courts in this circuit "have also considered the discretionary factors listed in the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(c)." *Lewis v. United States*, No. CV DKC 22-2566, 2023 WL 3304890, at *5 (D. Md. May 8, 2023). Those factors are:

(1) whether the supplemental claim "raises a novel or complex issue of State law,"

(2) whether the claim "substantially predominates over the . . . claims over which the district court has original jurisdiction,"

(3) whether the court has "dismissed all claims over which it has original jurisdiction," and

(4) "other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c).

In this case, the factors favor remand. The Plaintiffs challenge the state DEQ's issuance of a state discharge permit under the VAPA. (Pet. for App. at 3.) Though Plaintiffs claim that DEQ's decision violated the Clean Water Act as well as the Virginia State Water Control Law, state law predominates in this suit. (*See* Pet. for App. ¶¶ 36–38 (explaining that "DEQ issues VPDES permits authorizing discharges of pollutants to federal and state waters pursuant to Section 402 of the Clean Water Act and its implementing regulations and the requirements [o]f Virginia's State Water Control Law" (citations omitted).) This litigation—which will involve review of DEQ's decision-making regarding the issuance of the relevant permit—is complex and remains in its initial stages. Most of the litigation already undertaken has involved this court's jurisdiction over the case, rather than its merits. Further, the Plaintiffs "originally filed the action in . . . [their] forum of choice"—the state court. *Nielsen v. Miller*, No. 3:20-CV-00064, 2021 WL 1968292, at *4 n.9 (W.D. Va. May 17, 2021); (*see generally* Pet. for App.). Thus, considering the relevant factors, the court will remand this case to the Charlottesville Circuit Court.

## III. Conclusion

For the foregoing reasons, the court will dismiss the United States from suit. Further, the court will remand the remaining claims and parties to Charlottesville Circuit Court.

An appropriate Order will issue.

**ENTERED** this 24th day of November, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE